BENTLEY P. STANSBURY III, CASB No. 229102
bentley.stansbury@kyl.com
JOSHUA NORTON, CASB No. 292692
joshua.norton@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
400 Oceangate, Suite 1400
Long Beach, California  90802
Telephone:     (562) 436-2000
Facsimile:      (562) 436-7416

Attorneys for Petitioner
BRIAN DUNN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DUNN, an individual, | Case No. 22-7355 |
| Petitioner, | **PETITION TO ENJOIN PENDING FINRA ARBITRATION** |
| vs. | |
| INTELLIVEST SECURITIES, INC., | |
| Respondent. | |

Petitioner BRIAN DUNN ("Petitioner" or "Mr. Dunn") respectfully submits this Petition to enjoin an arbitration currently pending before the Financial Industry Regulatory Authority ("FINRA") entitled *Intellivest Securities, Inc. vs. Brian Dunn*, FINRA Case No. 22-01662.  For the reasons set forth below, this Court should grant Petitioner's Petition in its entirety, enjoin FINRA Arbitration Case No. 22-01662, and bar Respondent from pursuing its claims against Mr. Dunn before FINRA.

///

I.

**PRELIMINARY STATEMENT**

1. On or about December 15, 2020, Respondent INTELLIVEST SECURITIES, INC. ("Intellivest") submitted a statement of claim with FINRA, which initiated an arbitration against non-party Growth Capital Services, Inc. ("Growth Capital"), of which Mr. Dunn is the CEO and sole shareholder, entitled *In the Matter of the Arbitration Between Intellivest Securities, Inc. vs. Growth Capital Services, Inc.*, FINRA Case No. 20-04057 (the "Prior Arbitration"). (Exhibit "Exh." A.)

2. Mr. Dunn was not named as a respondent in the Prior Arbitration.

3. At the time of the Prior Arbitration, Growth Capital was a registered FINRA member and Mr. Dunn was a person associated with Growth Capital. Growth Capital's registration with FINRA was terminated in March of 2022, at which time Mr. Dunn also ceased to be a person associated with a FINRA member.

4. Intellivest's statement of claim against Growth Capital in the Prior Arbitration alleged that Intellivest is a registered broker-dealer which specialized in raising capital for clients from investors seeking to make impact investments. Intellivest asserted claims in the Prior Arbitration for (1) raiding; (2) misappropriation of trade secrets; (3) inducement of the breach of fiduciary duty/duty of loyalty; (4) tortious interference with economic advantage and business relations; (5) conspiracy; (6) unfair competition and unjust enrichment; (7) punitive damages; and (8) attorneys' fees and costs. Intellivest alleged that in March 2018, Growth Capital had "raided" Intellivest resulting in the resignation of all four of its registered representatives who left Intellivest for Growth Capital. Intellivest also alleged that in connection with the departure of those registered representatives for Growth Capital, Growth Capital attempted to get Intellivest's clients to breach their investment banking agreements with Intellivest and misappropriated Intellivest's proprietary information. Growth Capital disputed the allegations and denied any wrongdoing. (Exh. A.)

5. On January 10, 2022, the FINRA arbitration panel issued an award in favor of Intellivest and against Growth Capital in the amount of $908,929.50. The panel did not issue a reasoned decision in connection with the arbitration award. (Exh. B.) As Mr. Dunn was not named as a respondent in the Prior Arbitration, no award for damages was issued against Mr. Dunn.

6. In March 2022, Growth Capital's FINRA registration was terminated after non-payment of the arbitration award.

7. On April 26, 2022, Intellivest initiated an action in this district, the United States District Court, Northern District of California, San Francisco Division, as Case No. 4:22-cv-02522, by filing a Petition to Confirm Arbitration Award and Enter Final Judgment against Growth Capital (the "Confirmation Action"). (Exh. C.)

8. On May 3, 2022, shortly after the Confirmation Action was filed in this court by Intellivest, Growth Capital filed a petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of California, captioned as *In re Growth Capital Services, Inc.*, Case No. 22-30218 (the "Growth Capital Bankruptcy Case"). (Exh. D.)

9. In its schedules, Growth Capital listed Intellivest as an unsecured creditor with an unliquidated, disputed, and contingent claim of $908,929.50.

10. Intellivest filed a claim in the Growth Capital Bankruptcy Case for the amount of $929,015.69 based on the arbitration award issued against Growth Capital. (Exh. E.)

11. Due to the filing of the Growth Capital Bankruptcy Case, the Confirmation Action before this court was stayed. The Growth Capital Bankruptcy Case is still pending and the stay remains in effect. (Case No. 4:22-cv-02522, ECF Doc. Nos. 9, 10.) An initial case management conference in the Confirmation Action is scheduled for January 24, 2023. (ECF Doc. No. 13.)

12. On or about July 25, 2022, Intellivest initiated **another** FINRA arbitration based on the same facts and claims alleged in the Prior Arbitration. This time, however, Intellivest named only Mr. Dunn as the respondent in an effort to circumvent the Growth Capital Bankruptcy Case and recover for **the same** purported damages that Intellivest seeks by way of a judgment in the Confirmation Action that is **stayed but still pending** before this court.

13. Intellivest's new FINRA arbitration claim is entitled *Intellivest Securities, Inc. vs. Brian Dunn*, FINRA Case No. 22-01662 (the "Arbitration"), and it is this new arbitration that Mr. Dunn seeks to enjoin by way of this Petition. (Exh. F.)

14. In its Statement of Claim against Mr. Dunn in the Arbitration, Intellivest alleges that FINRA has jurisdiction over its claims against Mr. Dunn pursuant to FINRA Rule 13200 as a

- 3 -

dispute between a FINRA member and an associated person. To the contrary, Mr. Dunn is **not** an associated person with FINRA under FINRA Rule 13200 such that FINRA would have jurisdiction over Mr. Dunn. Mr. Dunn has not been an associated person with FINRA since March 2022 when Growth Capital's membership with FINRA was terminated, well before Intellivest initiated the Arbitration in July 2022. (Exh. G.)

15. Additionally, there is no contract between Mr. Dunn and Intellivest (or between Growth Capital and Intellivest, for that matter), let alone a contract in which Mr. Dunn agreed to arbitrate any claims between Mr. Dunn and Intellivest.

16. Mr. Dunn is not an associated person with FINRA and there is no contractual agreement to arbitrate between Mr. Dunn and Intellivest. By way of this Petition, Mr. Dunn respectfully seeks an order enjoining FINRA Arbitration Case No. 22-01662, and barring Intellivest from pursuing its claims against Mr. Dunn before FINRA.

## II.
## PARTIES

17. Petitioner Dunn is an individual residing in San Francisco, California. Mr. Dunn has not been an associated person with FINRA since March 14, 2022.

18. Respondent Intellivest is a Georgia Corporation with its principal place of business located in Riverdale, Georgia. Intellivest is a broker-dealer member of FINRA (CRD # 145022) and is registered with the Securities and Exchange Commission (SEC # 8-51247).

## III.
## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000. Specifically, Mr. Dunn is a citizen of California, while Intellivest is a Georgia Corporation with its principal place of business located in Georgia. Additionally, Intellivest has alleged in the FINRA Arbitration that Mr. Dunn owes Intellivest at least $908,929.50 in compensatory damages and punitive damages of no less than $1,817,859.00.

20. Furthermore, under the Federal Arbitration Act ("FAA"), 9. U.S.C. section 4,

"any party may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." Power to *enjoin* arbitration is "the concomitant of the power to compel arbitration," and thus this same provision of the FAA authorizes both orders to compel and orders to enjoin arbitration. *See PCS 2000 LP v. Romulus Telecomms., Inc.*, 148 F.3d 32, 35 (1st Cir. 1998) (quoting *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981)); *Morgan Keegan & Co. v. Shadburn*, 829 F. Supp. 2d 1141, 1143-44 (M.D. Ala. 2011) ("Finding strong support in the case law, the court concludes that it has the power to enjoin arbitration under the circumstances of this case.") (citing *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1449 n.23 (11th Cir. 1998)).

21.     Courts in the Ninth Circuit are in accord in holding that district courts have the power to enjoin arbitration concomitantly with their power to compel arbitration. *Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031 (W.D. Wash. 2011) (granting petition to enjoin arbitration because forcing party to arbitrate dispute it did not agree to arbitrate constituted *per se* irreparable harm) (citing *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003); *Chicago School Reform Board of Trustees v. Diversified Pharm. Services, Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999); *McLaughlin Gormley King Co. v. Terminix International Co., L.P.*, 105 F. 3d 1192, 1194 (8th Cir. 1997)); *see also Morgan Keegan & Co. v. Jindra*, 2011 U.S. Dist. LEXIS 135464, at *8 (W.D. Wash. Nov. 22, 2011) (listing three additional district court cases within the Ninth Circuit in which the courts granted motions for preliminary injunctions to enjoin arbitration).

22.     This Court has personal jurisdiction over Respondent Intellivest because Intellivest has purposefully availed itself of this forum, the Petition relates to Intellivest's forum-related activities, and the exercise of jurisdiction comports with fair play and substantial justice in light of the litigation already being pursued by Intellivest in this district with local counsel based on the same facts and circumstances. *See Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002); *Chapa v. Roxana Pislaru Foell*, 2014 U.S. Dist. LEXIS 206868, at *11, 15 (C.D. Cal. Feb. 25, 2014). Intellivest is currently pursuing claims before this Court in the Confirmation Action against Growth Capital of which Petitioner Dunn is the CEO and sole shareholder. (Exh. C.; Exh. F.)  Intellivest's

counsel in the Confirmation Action against Growth Capital, Mr. Bernard J. Kornberg of Practus, LLP, is located in San Francisco, CA, and is the same counsel representing Intellivest against Mr. Dunn in the Arbitration. Mr. Kornberg also represents Intellivest in connection with the claim it filed in the Growth Capital Bankruptcy Court, which is also pending in this district. (Exh. E.)

23. Venue in this district is appropriate for the same reason that Intellivest is already pursuing both the Confirmation Action and Intellivest's claim in the Growth Capital Bankruptcy Case in this district through its local counsel based on the same facts and circumstances as the Arbitration. Additionally, if the Arbitration were to go forward, the Arbitration would be required to take place in California under FINRA Rule 13213 of the Industry Code because Mr. Dunn resides in California.

## IV.

## ARGUMENT

24. Here, the Court should enjoin the Arbitration because Mr. Dunn is not a person associated with FINRA such that FINRA has jurisdiction over Intellivest's claims against Mr. Dunn in the Arbitration. Further, there is no contract between Mr. Dunn and Intellivest, let alone any contract that would require Mr. Dunn to submit to arbitration before FINRA. Because Mr. Dunn is not a person associated with a FINRA member and there is no contract between Mr. Dunn and Intellivest containing an arbitration clause, the Arbitration should be enjoined.

25. In its Statement of Claim in the Arbitration, Intellivest alleges: "FINRA has jurisdiction over these claims pursuant to FINRA Rule 13200 as the dispute arises out of the business activities between Intellivest, a member, and Dunn, an associated person." (Exh. F.) This is incorrect. Mr. Dunn is not an associated person under FINRA Rule 13200. Mr. Dunn has not been an associated person with FINRA since March 2022. (Exh. G.) The Statement of Claim in the Arbitration was filed in July 2022, well after Mr. Dunn ceased to be an associated person. (Exh. F.) Accordingly, there is no basis for FINRA jurisdiction over Mr. Dunn, and the Arbitration should be enjoined.

26. The Arbitration should be enjoined for the additional reason that there is no contract between Mr. Dunn and Intellivest (or between Growth Capital and Intellivest, for that matter),

let alone any contract containing an agreement to arbitrate. Mr. Dunn cannot be required to arbitrate this dispute before FINRA where, as here, he has not entered into a contract with Intellivest requiring him to submit to arbitration.

27. "Issues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (emphasis in original); *see also Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015) (noting that challenges "to the very existence of the contract must be resolved by the court"); *Freaner v. Valle*, 966 F. Supp. 2d 1068, 1079 (S.D. Cal. 2013) ("Importantly, however, arguments that deny the very existence of a contract [to arbitrate] . . . are . . . unfit for arbitral resolution because it is virtually impossible to conceive how a party advancing such an argument could be said to have agreed to arbitrate the question of the arbitrator's jurisdiction.").

28. Irreparable injury presumptively exists if a party is required to participate in an arbitration in which it has not agreed to participate. *See Meduri Farms, Inc. v. Dutchtecsource B.V.*, 2017 U.S. Dist. LEXIS 199793, at *35 (Dist. Or. Dec. 5, 2017) (citing *Textile Unlimited v. A..bmhand Co.*, 240 F.3d 781, 786 (9th Cir. 2001) ("The district court found that Textile would suffer irreparable harm if the arbitration were not stayed, that the balance of hardships tipped in Textile's favor and that it was in the public interest to stay arbitration. These findings were not clearly erroneous.") *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters Local 63*, 849, F.2d 1236, 1241 n.3 (9th Cir. 1988) ("Finally, Local 63 contends that declaratory and injunctive relief were inappropriate in this case because Consolidators did not show that further arbitration would have caused irreparable harm or that there was no adequate remedy at law. Consolidators was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate.").

29. Similarly, other courts have held that "[f]orcing a party to submit to arbitration, when it did not agree to do so, constitutes per se irreparable harm." *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, 2014 U.S. Dist. LEXIS 01660, at *4 (C.D. Cal. July 22, 2014); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (finding that a party would suffer irreparable harm if it had to "expend time and resources arbitrating an issue that is not arbitrable, and for which any

award would not be enforceable"); *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990) (holding that per se irreparable harm exists where an injunction was not entered prior to the court's determination of the arbitrability of plaintiff's claims).

30. Further, although the public interest may support alternative dispute resolution, it does not support requiring a party to arbitrate when it has not agreed to do so. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (declining to apply the liberal federal policy favoring arbitration when the question is whether a party is bound to arbitration instead of whether a particular issue or dispute is arbitrable). Requiring parties to give up their rights to a jury trial, civil discovery, and other procedural mechanisms without their consent is not in the public interest. *See Meduri Farms, Inc.*, 2017 U.S. Dist. LEXIS 199793, at *37; *see also Morgan Stanley & Co. LLC v. Couch*, 659 Fed. Appx. 402, 405-06 (9th Cir. 2016) (finding district court did not commit error in finding irreparable harm, balance of equities favoring injunction enjoining arbitration, and that injunction enjoining arbitration in the public interest where party not obligated to arbitrate).

31. Finally, the balance of the equities similarly favors enjoining an arbitration where, as here, Mr. Dunn is not an associated person and did not enter any contract with Intellivest, let alone a contract requiring him to submit to FINRA arbitration. "The balance of the equities similarly favors granting a preliminary injunction. [Petitioner] should not be required to arbitrate this dispute and forfeit its constitutional and procedural rights when it did not agree to do so. *Id.* at *37-38. Likewise, Mr. Dunn should not be required to arbitrate this dispute and forfeit his constitutional and procedural rights and, as such, the Arbitration should be enjoined.

**PRAYER**

For the foregoing reasons, this Court should grant Petitioner's Petition in its entirety, enjoin FINRA Arbitration Case No. 22-01662, and bar Respondent from pursuing its claims against Mr. Dunn before FINRA.

1  DATED: November 21, 2022          /s/ Joshua Norton
                                     BENTLEY P. STANSBURY III
2                                    JOSHUA NORTON
                                     KEESAL, YOUNG & LOGAN
3                                    Attorneys for Petitioner
                                     BRIAN DUNN
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 9 -