UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN DUNN,

    Petitioner,

v.

INTELLIVEST SECURITIES, INC.,

    Respondent.

No. C 22-07355 WHA

**DENIAL OF PROVISIONAL RELIEF AND ORDER TO SHOW CAUSE**

### INTRODUCTION

In this controversy between two investment firms, the immediate issue concerns whether one of the firms can maintain arbitration proceedings against the CEO and sole shareholder of the other. The CEO, our petitioner, seeks to enjoin the arbitration. For the reasons stated below, petitioner's application is **DENIED**. Petitioner is **ORDERED TO SHOW CAUSE** as to why this case should not be dismissed.

### STATEMENT

At all material times, petitioner Brian Dunn was the CEO and sole shareholder of non-party Growth Capital Services, Inc., which helped raise capital for clients "seeking to make impact investments" (Petition ¶ 4). In December 2020, respondent Intellivest Securities, Inc., which ran a similar business, initiated an arbitration before the Financial Industry Regulatory Authority against Growth Capital. In the FINRA arbitration, Intellivest broadly alleged that Growth Capital had "raided" its operations, including inducing Intellivest employees to move

1   to Growth Capital, encouraging Intellivest clients to breach investment agreements, and
2   misappropriating Intellivest proprietary information. In January 2022, the FINRA arbitration
3   panel issued an award in favor of Intellivest and against Growth Capital in the amount of
4   $908,929.50 (*id.* ¶¶ 4–5).

5   Growth Capital never paid the award. In May 2022, it filed a petition for Chapter 7
6   Bankruptcy in this district. *See In re Growth Capital Servs.*, *Inc.*, No. 22-30218. In its
7   schedules, Growth Capital listed Intellivest as an unsecured creditor for the arbitration award.

8   Undaunted, Intellivest initiated a second, virtually identical FINRA arbitration against
9   petitioner Dunn in July 2022 (Petition ¶¶ 6–12). Dunn appeared at the arbitration and moved
10  to dismiss, raising a variety of defenses including lack of jurisdiction (Dkt. No. 13-5). The
11  new arbitration panel denied his motion (Dkt. No. 13-7). Dunn now turns to federal district
12  court. He seeks to enjoin Intellivest from pursuing its claims in arbitration against him. This
13  order follows an exchange of briefing and oral argument.

**ANALYSIS**

15  A plaintiff seeking provisional relief must show that she is likely to succeed on the
16  merits, that she is likely to suffer irreparable harm in the absence of preliminary relief, that the
17  balance of equities tips in her favor, and that an injunction is in the public interest. *Winter v.*
18  *Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008). In balancing these factors, "'serious questions
19  going to the merits' and a hardship balance that tips sharply towards the plaintiff can support
20  issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury
21  and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d
22  1127, 1135 (9th Cir. 2010).

23  Our analysis here begins and ends with Dunn's inability to show likelihood of success on
24  the merits. Dunn's sole argument is that FINRA does not have jurisdiction over him because
25  he is no longer a FINRA member and has not been since March 2022. Dunn contends that,
26  because Intellivest's claims in the second arbitration proceeding are contingent upon his failure
27  to pay the award against Growth Capital in the first, the claims arose after he was a member.
28  Upon review, this argument does not hold up.

2

*First*, FINRA rules delegate the question of arbitrability to the arbitrator. FINRA Rule 13413 — which, as will be explained further below, is binding on Mr. Dunn — states that "[t]he panel has the authority to interpret and determine the applicability of all provisions under [FINRA rules]." As stated above, the arbitration panel has already determined that it has jurisdiction. The Court agrees that the decision that the panel made was within its authority. This alone is dispositive. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019).

*Second*, at oral argument, counsel for Mr. Dunn admitted that, during the events that gave rise to Intellivest's claims against Growth Capital, Mr. Dunn was personally registered with FINRA as a member. He also admitted that he was an "associated person" with Growth Capital, which was also a FINRA member (*see also* Petition ¶ 25; Exh. G). This means that he agreed to comply with FINRA rules, including the applicable rules on arbitrability.

Since 2007, FINRA has been a self-regulatory organization established under Section 15A of the Securities Exchange Act of 1934. 15 U.S.C. § 78o–3. FINRA is overseen by the SEC and has "the authority to exercise comprehensive oversight over 'all securities firms that do business with the public.'" *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (quoting 72 Fed. Reg. 42169, 42170 (Aug. 1, 2007)). Upon joining FINRA, a member agrees to comply with FINRA's rules. *See* FINRA Bylaws, art. IV, § 1(a). As a FINRA member, therefore, Mr. Dunn was bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein. Counsel for Mr. Dunn conceded as much at oral argument.

FINRA Rule 13200 states that

> a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among:
>
> Members;
>
> Members and Associated Persons; or
>
> Associated Persons.

3

Thus, because Intellivest is a FINRA member and Mr. Dunn was both a member and an associated person during the "business activities" that gave rise to Intellivest's claims, this dispute must be arbitrated under FINRA rules. Both parties acknowledged there is no contract between Mr. Dunn and Intellivest that would compel arbitration, but such a contract is unnecessary under the FINRA regime.

Further, as Intellivest points out, Mr. Dunn remains a member for the purposes of FINRA rules. Put differently, a FINRA member cannot circumvent the arbitrability of a dispute by simply terminating membership. Under FINRA Rule 1300(q), "the term 'member' means any broker or dealer admitted to membership in FINRA, *whether or not the membership has been terminated, suspended, cancelled, [or] revoked*" (emphasis added). Similarly, under FINRA Rule 1300(u), "a person formerly associated with a member is a person associated with a member."

At oral argument, counsel for Mr. Dunn insisted over and over again that Intellivest's statement of claims in the arbitration was dependent upon the nonpayment of the award against Growth Capital and, therefore, was dependent upon circumstances that arose after Mr. Dunn's FINRA membership. Counsel specifically focused on paragraph 53 of Intellivest's statement of claims, which states:

> Dunn failed to fulfill his contractual, member, and fiduciary duties to Intellivest by arranging for payment of the Award, but instead decided to simply terminate Growth Capital and release its valuable contracts, apparently out of indifference or spite to the rights and interests of Intellivest. Intellivest thus has no choice but to bring this action against Dunn in his personal capacity (Exh. F-a).

This paragraph, however, is not a necessary element of the claims of relief that follow. Claim I, for example, is for "raiding" and has nothing to do with Dunn's later failure to pay the arbitration award. So the argument by counsel for Mr. Dunn is unfounded. The same is true for the remaining claims for relief. Moreover, even if the statement of claims could be deemed to be entirely contingent upon Mr. Dunn's failure to pay, that failure arises out of the same "business activities" as those leading to the first arbitration because the award arose out of those activities.

4

Counsel for Mr. Dunn also repeatedly made the point at oral argument that Intellivest had already obtained an award against Growth Capital, and therefore there was no occasion for another proceeding, this time against him. This argument is incorrect. When a claimant obtains a judgment against a defendant in one proceeding, the same claimant may sue a different defendant for the same transaction and occurrence, so long as any recovery in the first suit is deducted from any recovery in the second suit. Counsel for Mr. Dunn has not provided any precedent to the contrary.

Counsel for Mr. Dunn further stated that all he was asking for was a restraining order preserving the status quo until these various issues could be sorted out. This sounds reassuring in its simplicity, but in truth, it violates the standards for provisional relief. It is quite clear that this dispute must be arbitrated. There is no call for a TRO or preliminary injunction.

In sum, Dunn has failed to offer legal arguments or evidence that raise "serious questions going to the merits." *Cottrell*, 632 F.3d at 1135 (9th Cir. 2010). The evidence instead shows that he is bound to arbitrate. His application for provisional relief is accordingly **DENIED**.

## CONCLUSION

For the foregoing reasons, petitioner's application for provisional relief is **DENIED**. Petitioner is **ORDERED TO SHOW CAUSE** as to why this action should not be dismissed without leave to amend. His response is due **14 DAYS** following this order at **NOON**. The Court is of the view that prompt entry of judgment against petitioner would facilitate correction of any error in this order by our court of appeals. So if Mr. Dunn truly believes he is not bound to arbitrate, then he should pursue an immediate appeal after entry of judgment.

**IT IS SO ORDERED.**

Dated: December 8, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5